UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALANANN PROPERTIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 1:19-cv-02674-JRS-TAB |
| | ) |
| MORRIS INVEST, LLC, | ) |
| CLAYTON MORRIS, | ) |
| | ) |
| Defendants. | ) |

**Order on Motion to Dismiss (ECF No. 16)**

Invoking this Court's diversity jurisdiction, Plaintiff Alanann Properties, LLC ("Alanann" or "Plaintiff") brings various common law claims against Morris Invest, LLC and Clayton Morris (collectively, "Defendants"). (Compl., ECF No. 1.) Alanann, an entity owned by Laura and Jeffrey Rolerat, purchased a dilapidated single-family home in Indianapolis from Defendants. Plaintiff purchased the home as an investment property, intending to lease it and collect rent. Plaintiff alleges that Defendants failed to fulfill their obligations by not rehabilitating the property, not securing tenants for the property, and not managing the property, leaving Plaintiff with an uninhabitable home. Alanann brings the following causes of action: breach of contract, promissory estoppel, fraud/deception, conversion, negligence, and a violation of the Indiana Deceptive Sales Consumer Act ("IDCSA").

Defendants now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the following

reasons, Defendants' Motion to Dismiss (ECF No. 16) is **denied in part** and **granted in part**.

## I. Background[1]

Plaintiff's Complaint alleges that Clayton Morris is a co-founder and owner of Morris Invest. (Compl., ECF No. 1 at 2.) Morris formed Morris Invest to "help individuals attain financial freedom and grow their personal wealth through passive income." (*Id.*) Morris, through Morris Invest, creates podcasts, YouTube videos, and blogs in which he discusses real estate and promotes its real estate program to potential investors. (*Id.* at 4.) The program is marketed as a three-step wealth building plan. (*Id.*) First, Morris Invest holds a thirty-minute phone consultation with prospective investors to learn about their investment goals. (*Id.*) Next, the prospective investor selects one of the properties offered by Morris Invest. (*Id.*) Lastly, Morris handles the rehabilitation of the property, finds and secures tenants, and sells the property to the investor in a "rent-able" condition. (*Id.* at 4-5.) All the investor has to do is collect rent from the property. (*Id.* at 5.)

In March 2018, the Rolerats were directed to the Morris Invest website after listening to Morris's podcast. (*Id.* at 8). The Rolerats were contacted by Glenn Radford, a representative of Defendants, who told them that there were investment properties available for purchase in Indianapolis. (*Id.* at 8-9.) The Rolerats live in Hartland, Wisconsin. (*Id.* at 2.) On March 20, 2018, the Rolerats purchased a recommended property at 2327 Columbia Avenue, Indianapolis, Indiana for $48,500, inclusive of

---

[1] Consistent with the Rule 12(b)(6) standard, Plaintiff's non-conclusory allegations are taken as true for purposes of Defendants' motion to dismiss.

2

rehab costs. (*Id.* at 9.) After the purchase, the Rolerats attempted to obtain updates on the rehabilitation of the property from Defendants but were unsuccessful. (*Id.*) Defendants told the Rolerats that a different entity, Oceanpointe Investments Limited ("Oceanpointe"), was the entity responsible for rehabilitating and renting out the property. (*Id.*) The Rolerats hired a different company to rehabilitate the property and subsequently sold the property for $12,500. (*Id.*)

Plaintiffs later learned that Defendants were only marketers. (*Id.* at 5.) Defendants use affiliated entities, such as Oceanpointe, Indy Jax Wealth Holdings, LLC, and Indy Jax Properties, LLC (collectively, "Indy Jax"), to identify, sell, rehabilitate, secure tenants for, and manage the properties their investors buy. (*Id.*) The Complaint incudes an excerpt of an email from "clayton@morrisinvest.com" that reads: "Yes sir we have many LLC's that we use to hold our acquisitions before rehab. And [Oceanpointe] is just one of them we own."

Plaintiff attaches the Purchase Agreement ("Agreement") to its Complaint. The Agreement states that the purchase price includes "the rehabilitation of this property should the property require any renovations to achieve rentable conditions as per the scope of work." (Purchase Agreement, ECF No. 1-1- at 3.) The Agreement does not contain any terms referencing tenant or property management services.

## II.   Legal Standard

To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a Rule 12(b)(6) motion to dismiss,

the court takes the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019). The Court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

"[I]f a plaintiff pleads facts that show its suit [is] barred . . . , it may plead itself out of court under a Rule 12(b)(6) analysis." *Orgone Capital*, 912 F.3d at 1044 (quoting *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995)); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (quoting *Hamilton v. O'Leary,* 976 F.2d 341, 343 (7th Cir. 1992)) (on a motion to dismiss "district courts are free to consider 'any facts set forth in the complaint that undermine the plaintiff's claim'"). "When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity . . . to amend the complaint to correct the problem if possible." *Bogie*, 705 F.3d at 608. Nonetheless, leave to amend need not be given if the amended pleading would be futile. *Id.*; *see also Foman v. Davis,* 371 U.S. 178, 182 (1962).

### III.  Discussion

*A. Breach of Contract*

Defendants argue that Plaintiff's breach of contract claim must be dismissed because the Agreement does not contain any tenant related or property management obligations and because Morris Invest is not a party nor a signatory to the Agreement. In response, Plaintiff argues that Defendants' obligation to provide tenant and property management services are implicit in Defendants' statements that it was selling Plaintiff a "turnkey" property, meaning that the property was habitable, managed,

4

and had tenants in place. Plaintiff also argues that Morris Invest cannot disclaim liability because Plaintiff has "pleaded facts supporting an inference that Clayton Morris's signature of the purchase agreement was permitted and/or ratified by Morris Invest, and that Morris Invest accepted the benefits of the act." In reply, Defendants argue that Plaintiff cannot embellish the contractual obligations in the Agreement with the use of the word "turnkey" which does not appear in the Agreement. Defendants maintain that the terms of the Agreement are clear and unambiguous, rendering any extrinsic evidence inadmissible to add to, vary, or explain the terms of the contract.

The Court may consider the Agreement in ruling on Defendants' Motion to Dismiss. *See* Fed. R. Civ. Pr. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Further, "[w]hen an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

Turning first to Morris Invest's argument that it is neither a party nor a signatory to the Agreement and therefore cannot be held liable in a breach of contract action, the Court disagrees. It is a fundamental principle of agency law that "[t]he acts of an agent, within the scope of the authority delegated to him, are deemed the acts of the principal. Whatever he does in the lawful exercise of that authority is imputable to the principal, and may be proven without calling the agent as a witness." *Vicksburg & M. R. Co. v. O'Brien*, 119 U.S. 99, 104 (1886). Plaintiff has pleaded sufficient facts

5

supporting the inference that Clayton Morris signed the agreement as an agent of Morris Invest. The Complaint alleges that Clayton Morris is a co-founder and owner of Defendant Morris Invest. (Compl., ECF No. 1 at 2.) The Complaint also makes several factual allegations that Morris Invest was involved in the real estate program that forms the basis of this lawsuit. (*See Id.* at 4) ("Morris Invest lures potential investors by advocating its program through blogs, YouTube videos, and a podcast"); (*Id.*) ("Morris Invest persuades investors to participate in its program by claiming to have been founded on a three-step wealth building plan"); (*Id.*) ("Plaintiff was told by Defendants that Morris Invest would handle everything pertaining to the Rental Properties"). Moreover, Morris Invest is named in and benefits from the Agreement. The Agreement contains a non-disparagement clause, which states: "Buyer agrees to not make any statement whether written or oral, that disparage, defame or otherwise libel Morris Invest or any of its affiliated companies or any of its current or former employees." (Agreement, ECF No. 1-1 at 4.) The Complaint's allegations that Morris Invest marketed and facilitated the real estate program, as well as the fact that the Agreement names Morris Invest supports the inference that Plaintiff entered into the contract with Morris Invest. Plaintiff may proceed with its breach of contract claim against both Clayton Morris and Morris Invest.

However, as the Agreement does not contain any provisions requiring Defendants to identify, screen, and secure tenants, or manage the property, these claims must be dismissed. Plaintiff argues that even though the Agreement does not include express terms regarding securing tenants or managing the property, that does not negate the

6

possibility that the parties entered into an agreement regarding those matters at some point. But the Agreement contains an integration clause, which provides: "This Agreement constitutes the sole and only agreement of the parties and supersedes any prior understandings or written or oral agreements between the parties' respecting the transaction and cannot be changed except by their written consent." (Agreement, ECF No. 1-1 at 4.) Plaintiff has not alleged that the Agreement was changed by both parties' written consent, as required by the Agreement and the Indiana Statute of Frauds. *See* IND. CODE § 32-21-1-1.

Plaintiff's reliance on *Neurology & Pain Mgmt. Assocs., P.C. v. Bunin,* No. 3:17-CV-035 JD, 2018 WL 3830059 (N.D. Ind. Aug. 13, 2018), is unpersuasive. In *Bunin,* the Court found that the plaintiff had stated sufficient facts to support a plausible claim for breach of contract, despite the fact that the contract lacked signatures and contained blank spaces regarding the defendant's compensation and scope of work. *Id.* at *3. The Court reasoned that the plaintiff sufficiently alleged that the parties accepted and acted pursuant to the contract's terms, despite the lack of signature and blank spaces. *Id.* In contrast, Alanann has not alleged facts that would support a plausible claim for breach of contract regarding securing tenants and managing the property. The Agreement contains no language regarding these obligations and specifically states that the Agreement is the sole and only agreement of the parties.

Accordingly, Plaintiff's breach of contract claim as to securing tenants and managing the property are dismissed. Plaintiff may proceed on its breach of contract claim as to rehabilitation of the property.

*B. Promissory Estoppel*

Plaintiff alleges that "Defendants made a clear and unambiguous promise to Plaintiff that Defendants would sell the Rental Property to Plaintiff, rehabilitate the properties, identify tenants, screen tenants, secure tenants, manage the Rental Property, and provide rent checks to Plaintiff" and that Plaintiff reasonably and foreseeably relied on those promises to their detriment. (Compl., ECF No. 1 at 10-11.) Defendants argue that Plaintiff's promissory estoppel claim must be dismissed because Plaintiff did not plead Defendants' alleged fraudulent actions with particularity, as required by Federal Rule of Civil Procedure 9(b) and because Indiana law does not permit claims for promissory estoppel that are founded on a written contract between the parties. Plaintiff disputes that it must comply with 9(b)'s heightened pleading standard, and argues that if it had to, it has sufficiently pleaded the "who, what, where, when, and how" of the fraud.

"[A] party asserting promissory estoppel must establish five elements: (1) a promise by the promisor (2) made with the expectation that the promisee will rely thereon (3) which induces reasonable reliance by the promisee (4) of a definite and substantial nature and (5) injustice can be avoided only by enforcement of the promise." *Grdinich v. Plan Comm'n for Town of Hebron*, 120 N.E.3d 269, 279 (Ind. Ct. App. 2019) (internal quotation marks and citations omitted). However, promissory estoppel permits recovery only where no contract in fact exists. *Indiana Bureau of Motor Vehicles v. Ash, Inc.*, 895 N.E.2d 359, 367 (Ind. Ct. App. 2008). Plaintiff's promissory estoppel

8

claim "emerge[s] out of a pattern of fraudulent conduct [Plaintiff] insinuates the [Defendants] engaged in." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 950 (7th Cir. 2013). Therefore, this claim falls under the Rule 9(b) requirement that allegations of fraud must be plead with particularity. *Id.* To comply with Rule 9(b), "a plaintiff must state with particularity the circumstances constituting fraud[,] meaning 'describing the who, what, when, where, and how' of the fraud." *Id.* (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)) (internal quotation marks omitted).

The Court has already found that a contract exists that covers the rehabilitation of the property, so Plaintiff may not pursue a promissory estoppel claim related to the alleged promise to rehabilitate the property. Because the Court found no contract to exist relating to tenant and management services, though, Plaintiff may pursue these claims under a promissory estoppel cause of action. Plaintiff has sufficiently pleaded the promises to secure tenants and manage the property. The Complaint alleges that Plaintiff purchased the property to be used as a rental property for the purpose of generating passive income, and Defendants promised Plaintiff that they would find, screen, and secure tenants and manage the property. (Compl., ECF No. 1 at 7.) Plaintiff also makes these allegations with sufficient particularity. Plaintiff alleges that in March 2018, Defendants' representative, Glenn Radford, contacted the Rolerats and told them that there were "turnkey" properties available for purchase in Indianapolis and that Defendants would handle the rehabilitation, securing tenants, and managing the property. (Compl, ECF No. 1 at 7-9.) Theses allegations

include the who (Glenn Radford, Defendants' representative), when (March 2018), what (Defendants would manage the property and secure tenants), the how and where (on the phone). It is reasonable to infer that Plaintiff would not have purchased a property in a different state if it was not also promised that Defendants would handle the tenant and management related services. At this stage, Plaintiff has alleged enough facts to state a claim that Defendants promised to secure tenants and manage the property.

Therefore, Plaintiff may proceed with its promissory estoppel claim as it relates to tenant and management services. Plaintiff's promissory estoppel claim relating to rehabilitation of the property is dismissed.

## C. *Fraud/Deception*

Plaintiff also alleges that Defendants knowingly and intentionally made false statements of important existing facts, including that Defendants would sell the rental property to Plaintiff, rehabilitate the property, identify tenants, screen tenants, secure tenants, manage the rental property and provide rent checks to Plaintiff. Defendants argue that Plaintiff has not pleaded fraud with the specificity required by Rule 9(b), that the alleged misrepresentations relate to future conduct or opinion and therefore cannot be the subject of a claim for fraud, and that the fraud claim is merely a repackaged version of its breach of contract claim. In response, Plaintiff sets out the "who, what, where, when, and how" of its fraud claim, and argues that Defendants' statements were not promises of future conduct but statements of existing fact about the nature of the investment product Defendants sold to Plaintiff.

Under Indiana Law, a claim for fraud exists when there is "a material misrepresentation of past or existing fact made with knowledge of or reckless disregard for the falsity of the statement, and the misrepresentation [is] relied upon to the detriment of the relying party." *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 675 (Ind. 1997) (citations omitted). "Actual fraud may not be based on representations of future conduct, on broken promises, or on representations of existing intent that are not executed." *Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1115 (Ind. Ct. App. 2008), as modified (Nov. 13, 2008) (citing *Wallem v. CLS Indus., Inc.*, 725 N.E.2d 880, 889 (Ind. Ct. App. 2000)).

Plaintiff's allegations include statements that Defendants "*would* handle everything pertaining to the Rental Properties," (Compl., ECF No. 1 at 5), that the property "*would* be rehabbed by Morris Invest," (*id.* at 7), that "Defendants *would* find, screen, and secure tenants for the Rental Property," (*id.*), and that Plaintiffs "*would* receive a turnkey Rental Property, complete with paying tenant and property management services," (*id.*). These statements are not statements of existing fact. According to the Complaint, Defendants did not represent that the property was already rehabbed or that they had already secured tenants. Instead, Defendants made promises that they did not keep and representations of what may have once been their intent but that were never executed. A claim of fraud cannot be based on statements of future conduct, and therefore Plaintiff's fraud/deception claim is dismissed.

*D. Conversion*

Plaintiff alleges that Defendants converted the funds, $48,500, paid by Plaintiff to Defendants "specifically and expressly for the purpose of rehabilitation of the Rental Property." (Compl., ECF No. 1 at 13.) Defendants argue that this claim must be dismissed because Indiana law does not allow for a conversion claim to be brought alongside a breach of contract claim. Defendants also argue that, even if the two claims could be brought together, Plaintiff cannot establish a "determinate sum" that was converted, because the amount alleged includes both the property and alleged services.

In response to Defendant's argument that Indiana law does not allow for a conversion claim to be brought alongside a breach of contract claim, Plaintiff states: "Because parties may plead claims in the alternative, Plaintiff has pled factual allegations sufficient to support claims for promissory estoppel, fraud, and negligence[.]" (Pl. Br., ECF No. 24 at 21.) Thus, Plaintiff's brief appears to concede that conversion and breach of contract claims may not be brought together, especially given the opening sentence of this section of the brief: "Defendants argue that Plaintiff cannot bring tort claims for promissory estoppel, fraud, conversion, and negligence alongside its contract claims." (*Id.*) Regardless, by not responding to Defendant's argument that breach of contract and conversion claims may not be brought alongside each other, Plaintiff has waived any argument to the contrary. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) (a party generally forfeits an argument or issue not raised in response to a motion to dismiss).

12

*E. Negligence*

Plaintiff alleges that Defendants owed Plaintiff a duty to "properly screen, hire, retain, and supervise the company it engaged to perform the services it promised Plaintiff" and to "[t]ake appropriate steps and implement appropriate measures and policies to learn of and correct Oceanpointe and other entities' failure to rehabilitate the property, locate tenants for the property, manage the property, and perform other services promised by Defendants to Plaintiff." Defendants argue that Plaintiff has not sufficiently alleged that Defendants owed Plaintiff a duty, nor has it alleged the existence of an employer-employee relationship between Defendants and Oceanpointe from which such a duty would arise. Defendants also argue that Plaintiff's claim is barred by the economic loss doctrine, which only allows for recovery of damage for personal injury or damage to property under a negligence claim. In response, Plaintiff argues that it specifically pleaded that Defendants owed Plaintiffs a duty to "take appropriate steps and implement appropriate measures and policies to learn of and correct Oceanpointe's and other entities' failure to rehabilitate the Properties, locate tenants for the Properties, [and] manage the Propert[ies.]" Plaintiffs dispute that the economic loss doctrine applies, arguing that they alleged Defendants' negligence "was the proximate cause of physical damage to the Properties because the Properties remained empty, neglected, and unmaintained."

Under Indiana law, a claim for negligent retention and supervision—which Plaintiff appears to allege—has three elements: "1) a duty of care owed by an employer to a third person; 2) a breach of that duty; and 3) injury to the third person proximately

caused by the employer's breach." *Scott v. Retz*, 916 N.E.2d 252, 257 (Ind. Ct. App. 2009). The question of whether a duty exists is a question of law for the Court to decide. *See Rogers v. Martin*, 63 N.E.3d 316, 321 (Ind. 2016). Plaintiff has failed to allege the existence of a duty Defendants owed the Plaintiff. Plaintiff's Complaint alleges that Defendants' failed to take appropriate steps to supervise Oceanpointe and correct its failures, but has not alleged a master/servant or employer/employee relationship between Defendants and Oceanpointe or "the other entities," nor do the allegations clearly set forth the mechanics of the relationship such that the Court could infer the existence of an employer/employee relationship. Plaintiff does not allege that Oceanpointe and/or the other entities were under Defendants' control or that Defendants had the power to hire, fire, or otherwise supervise the entities. In sum, Plaintiff fails to allege the existence of a relationship (or facts allowing the Court to infer such a relationship) between Defendants and Oceanpointe or the other unnamed entities that would create a duty owed by Defendants. Therefore, Plaintiff's negligence claim is dismissed.

### F. Indiana Deceptive Consumer Sales Act

Plaintiff asserts Defendants have violated the Indiana Deceptive Consumer Sales Act (IDCSA), alleging that Defendants "intentionally and materially misrepresented to Plaintiff the nature of the program offered by Defendants and the nature of the investment products sold to Plaintiff." (Compl., ECF No. 1 at 15.) The IDCSA prohibits a supplier from committing an unfair, abusive, or deceptive act, omission, or

practice in connection with a consumer transaction. IND. CODE § 24-5-0.5-3. A consumer transaction is defined as "a sale, lease, assignment, award by chance, or other disposition of an item of personal property, real property, a service, or an intangible . . . to a person for purposes that are primarily personal, familial, charitable, agricultural, or household, or a solicitation to supply any of these things." IND. CODE § 24-5-0.5-2(a)(1).

Defendants argue that the sale of the property to Plaintiff was not a consumer transaction because Plaintiff purchased it for the purpose of investment, not personal use. Plaintiff maintains that the deceptive sales act was not the sale of the property but the sale of the investment program, which was a consumer transaction. The Court disagrees. Although Plaintiff may have purchased the property as a part of an investment program, the only transaction alleged is the sale of the property. Plaintiff has not alleged that the investment program was a separate transaction, or that the purchase of the property was also payment to join an investment program. The purchase of the property was not a "consumer transaction" as defined by the statute. The Complaint makes this clear, alleging that Plaintiff purchased a "real estate investment property" (Compl., ECF No.1 at 2), and that the property was "to be used as a rental property for the purpose of generating 'passive' rental income to Plaintiff." (*Id.* at 7.) An investment property purchased to generate passive income cannot be classified as a transaction that has a "personal, familial, charitable, agricultural, or household" purpose. Accordingly, Plaintiff's claim under the IDCSA is dismissed.

## IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss is **denied in part** and **granted in part**. Plaintiff's breach of contract claim relating to Defendant's failure to identify, screen, and secure tenants and manage the property is **dismissed**. Plaintiff's promissory estoppel claim relating to Defendant's failure to rehabilitate the property is **dismissed**. Plaintiff's fraud/deception claim is **dismissed**. Plaintiff's conversion claim is **dismissed**. Plaintiff's negligence claim is **dismissed**. Plaintiff's claim under the Indiana Deceptive Consumer Sales Act is **dismissed**. However, Plaintiff is **allowed twenty-one days** within which to file an amended complaint to address the deficiencies identified in this order, provided Plaintiff can do so consistent with counsel's obligations under Fed. R. Civ. P. 11. Otherwise, these claims will be dismissed.

Plaintiff's breach of contract claim relating to the Defendants' failure to rehabilitate the property and Plaintiff's promissory estoppel claim relating to the Defendant's failure to identify, screen, and secure tenants and manage the property **may proceed**. The parties are encouraged to confer with the Magistrate Judge regarding settlement prior to trial.

**SO ORDERED.**

Date: 6/19/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution via CM/ECF to all registered parties.